The petition for the writ of mandamus filed by Blue Cross and Blue Shield of Alabama ("Blue Cross") is granted. The trial court is directed to set aside its order designating a class and certifying this as a class action, and it is directed to set aside its order entering a partial summary judgment for the plaintiffs on the issue of liability. All other relief sought by the petitioner is denied.
The appeal filed by Blue Cross is dismissed.
"POOR FINANCIAL HEALTH BESETS BLUE CROSS AND BLUE SHIELD — Eleven of Insurer's 73 Plans Fall Short in Measurement of Capital Levels." This headline appeared in the March 27, 1991, issue of The Wall Street Journal in an article warning that there is danger that one or more Blue Cross and Blue Shield plans will fail, leaving their policyholders to pay their own medical bills. Approximately 1,500,000 Alabamians are furnished health care services under health care service plans administered by Blue Cross and Blue Shield of Alabama ("Blue Cross"). The disposition of this important case could ultimately affect the financial health of Blue Cross, could allow those Alabamians who are entitled to have health care benefits paid by Blue Cross to continue to receive such benefits in accordance with the health care benefit plans under which they are covered, and could assure that those *Page 471 
entities or individuals obligated to pay the premiums for Blue Cross health care benefits pay no more than they are legally obligated to pay. Therefore, this Court must determine whether the trial court of Coffee County, Elba Division, erroneously determined, as a matter of law, what the contingency reserve of Blue Cross should consist of and whether the trial court rushed to judgment in this action in designating a class pursuant to Rule 23(a), A.R.Civ.P., and in certifying this as a class action pursuant to Rule 23(b)(2).
This proceeding was initiated in the Circuit Court of Coffee County, Elba Division, as an action seeking a declaratory judgment and an order directing refunds of excess reserves alleged to be held by Blue Cross. Martha H. Sanderson, Robert Sanderson, and Rosie Mobley ("original plaintiffs"), all of whom were residents of Monroe County, brought this action "on behalf of themselves and all members of the class composed of all subscribers for health care benefits provided by" Blue Cross. The original plaintiffs requested the trial court to enter "an order allowing this cause to be maintained as a Plaintiffs' class action . . .[;] a . . . judgment declaring that [Blue Cross] violated the law by accumulating an excessive or illegal reserve and/or profit . . .[;] and a . . . judgment declaring that the composition of the Public members of the Board of Directors [of Blue Cross] is illegal and/or void." The original plaintiffs asked the trial court to require that Blue Cross comply with Ala. Code 1975, § 10-4-100 et seq.; to enjoin Blue Cross from maintaining its present board of directors and to supervise the appointment of a "public board of directors" in accordance with § 10-4-103; to enter a judgment declaring "an amount which may be held by Blue Cross as reserve and/or unassigned profits which is reasonably necessary to insure the solvency of [Blue Cross] and compliance of [Blue Cross] with Alabama statutes"; and to "award to the Plaintiffs' attorneys as attorneys for the class a reasonable attorney's fee from the amount ordered refunded or [determined] to be excessive."
Blue Cross filed a motion to dismiss and assigned as grounds the following: failure "to exhaust administrative remedies in the Alabama Department of Insurance ['Insurance Department'] with respect to the matters made the basis of the complaint"; primary jurisdiction of the Insurance Department; lack of subject matter jurisdiction; that the action was time barred; that plaintiffs lacked standing to assert the matters made the basis of the complaint; improper venue; inappropriate venue under § 6-3-21.1; failure to join employers and other entities with which Blue Cross had contracted "for provision or administration of health benefit plans which would be adversely affected by the relief sought"; failure "to join the Commissioner of Insurance of Alabama ['Commissioner'] as a party"; and failure "to state a claim upon which relief could be granted."
The complaint was amended to add five "new" plaintiffs, all of whom were residents of Coffee County and were designated as subscribers for health care benefits provided by Blue Cross. There was no allegation in the amended complaint, or in any subsequent complaint, that these "new" plaintiffs were representing a class.
Blue Cross amended its motion to dismiss and for transfer to encompass the "new" plaintiffs. Six and a half months after this suit was filed, a second amended complaint was filed, adding counts seeking damages for breach of contract, unjust enrichment, and fraud. A third amended complaint added three "new" plaintiffs — an individual subscriber who lived in Monroe County and two employers who contracted with Blue Cross for the provision of health care benefits to their employees. There was no allegation that these "new" plaintiffs were representing a class. Blue Cross moved to strike the second and third amendments to the complaint. The fourth and last amendment to the complaint was filed, adding the Commissioner as a party defendant. The Commissioner filed a motion to dismiss, assigning as grounds a failure to exhaust administrative remedies, usurpation of the Insurance Department's *Page 472 
primary jurisdiction, lack of subject matter jurisdiction, and improper venue.[1]
Affidavits from 15 individuals were filed. Three of the individuals from whom affidavits were obtained were also deposed. Memoranda of law were filed in support of and in opposition to Blue Cross's and the Commissioner's motions. In response to a request by the trial court that the parties advise the trial court of all pending motions that needed to be ruled on, the parties identified the following motions: (1) Blue Cross's motion to dismiss, as amended; (2) Blue Cross's motion for transfer, as amended; (3) Blue Cross's motion converting its motion to dismiss into a motion for summary judgment; (4) Blue Cross's motion to strike the second and third amendments to the complaint; (5) the Insurance Department's motion to dismiss, or in the alternative, for summary judgment; (6) Blue Cross's motion to strike the last two sentences of the affidavit of James E. Walker III; and (7) the plaintiffs' motion to strike the supplemental affidavit of Harland Dyer. The plaintiffs' motion to strike was denied by the trial court.
Although the original complaint sought "an Order allowing this cause to be maintained as a Plaintiffs' class action," the trial court, without a motion for class designation being filed and without class designation or the certification of this action as a class action being identified by the parties as matters that needed to be ruled on, designated the plaintiff class as follows:
 "All subscribers, policyholders, holders of certificates of coverage, and members or participants of group coverage directly issued and underwritten by [Blue Cross] . . . on March 31, 1988."
It also certified this as a class action under Rule 23(b)(2), A.R.Civ.P., which provides for certification when, "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." On the same day, the trial court entered an order denying all of Blue Cross's pending motions except its motion to dismiss, which it granted as to all plaintiffs who received health care benefits from Blue Cross under self-insured or self-funded plans (which included original plaintiffs Martha H. Sanderson and Rosie Mobley). By the same order, the trial court entered a partial summary judgment in favor of the plaintiffs, holding as follows:
 "[T]he plaintiffs are entitled to judgment as a matter of law on the question of whether Blue Cross may hold a portion of its surplus or 'contingency reserves' as a reserve for claims and operating expenses of self-insured funds administered by Blue Cross and upon which Blue Cross has no underwriting risk.
 ". . . It is the intention of this Court to hereby enter judgment in favor of the plaintiffs and their class on the question of liability of Blue Cross for refund of that amount of the true surplus of Blue Cross over and above 4 months of the prior 12 months of claims and expenses of Blue Cross on its underwritten lines of business. This, in effect, is a partial Summary Judgment on the question of liability."
Blue Cross filed a notice of appeal and a petition for a writ of mandamus or prohibition or both in the Court of Civil Appeals. Upon request of the Court of Civil Appeals and motions by the parties, this Court ordered these proceedings transferred to this Court. We recognize that the issues raised by Blue Cross could have been resolved appropriately on appeal if the trial court had certified its judgment as final pursuant to Rule 54(b), Ala.R.Civ.P. However, because the trial court did not make its judgment final, and therefore appealable, Blue Cross's appeal in this case (case 1900471) is due to be dismissed, but we will address the issues presented in Blue Cross's petition for a writ of mandamus or prohibition *Page 473 
or both (case 1900470), which is properly before this Court.
For the reasons set out in this opinion, the writ of mandamus is granted. The trial court is directed to set aside its order designating a class and certifying this as a class action and is directed to set aside its partial summary judgment for the plaintiffs on the issue of liability. All other relief sought by the petitioner is denied.
 DESIGNATION OF THE CLASS AND CERTIFICATION OF THIS AS A CLASS ACTION
The original plaintiffs alleged that their claims are typical of claims of the entire class (subscribers for health care benefits provided by Blue Cross); and that, in their representative capacities, they will fairly and adequately protect the interests of the class (subscribers for health care benefits provided by Blue Cross). These are two of the prerequisites that must be alleged and proved before a trial court can determine whether the action can proceed as a class action. Rule 23(a), A.R.Civ.P.; Rowan v. First Bank of Boaz,476 So.2d 44, 46 (Ala. 1985).
Count I of the complaint reads, in pertinent part, as follows:
 "The provisions of Section 10-4-100 et seq. provide for the operation of [nonstock corporations organized not for profit to establish and maintain health care service plans] and make specific provisions as to amounts which can be held in reserve by said corporations. . . .
 "[Original plaintiffs] aver that [Blue Cross] has violated the provisions of Section 10-4-100 et seq. in that it has accumulated an illegal and/or excessive profit and/or reserve and surplus in excess of the amount allowed by statute in Alabama, or required for the solvency of the plan. [The original plaintiffs] aver that they and members of the . . . class that they represent have had a direct economic cost imposed upon both them and members of the class as a result of said illegal and improper actions by [Blue Cross].
". . . .
 "[Blue Cross] continues to maintain and accumulate excessive reserves and/or profits and continues . . . in violation of Alabama statutes and law, all to the detriment of [original plaintiffs'] class. [Original plaintiffs] and the members of [their] class have suffered and continue to suffer economic harm as a result of the illegal actions of [Blue Cross] . . . in the excessive premiums charged. . . .
". . . .
 "[Original plaintiffs] request that this Honorable Court enter pursuant to Rule 23(b)(1) and 23(b)(2), Alabama Rules of Civil Procedure, an Order allowing this cause to be maintained as a Plaintiff's class action. . . .
 "That the Court enter a declaratory judgment declaring that [Blue Cross] violated the law by accumulating an excessive and/or illegal reserve and/or profit.
". . . .
 "That this Court declare an amount which may be held by Blue Cross as reserve and/or unassigned profits which is reasonably necessary to insure the solvency of the company and the compliance of [Blue Cross] with Alabama statutes and that the Court order such other and further relief as may be appropriate under the circumstances as regards . . . disposition of any amounts held by [Blue Cross] in excess of that amount determined by the Court to be reasonable reserves or surplus."
(Emphasis added.)
Blue Cross filed a motion to dismiss and assigned as a separate ground that the original plaintiffs lack standing to assert the matters made the basis of the complaint. To support this motion, Blue Cross filed an affidavit of E. Gene Thrasher, executive vice-president of Blue Cross, who swore that he was familiar with the rating and actuarial aspects of Blue Cross's business and that he was competent to make the statements set forth in the affidavit. In his affidavit, Thrasher swore that Ms. Sanderson and Ms. Mobley were participants in a self-insured health care service plan and, as such, did not "contribute to *Page 474 
the contingency reserve" and that "[t]he level of Blue Cross's contingency reserves has no effect whatsoever on benefits available to [Ms. Sanderson and Ms. Mobley] or on the amount of charges for coverage that [Ms. Sanderson and Ms. Mobley] are required to bear under" their self-insured plan. Thrasher further swore that Ms. Sanderson and Ms. Mobley did benefit from the contingency reserve to the extent that "the contingency reserve provides cash flow for payment of benefits from one contract period to the next in the event that advance deposits from" their employer "fall short of claims paid during the contract period."
As to the only other original plaintiff, Robert Sanderson, Thrasher swore that he was a participant in the Medicare Complimentary C-Plus category of business and that this category benefited from Blue Cross's contingency reserve in an amount substantially in excess of the amount of total premiums paid by that category of business. As of March 31, 1988, the date the complaint was filed, the Medicare Complimentary C-Plus category had paid $2,277,558 less in total premiums than it had received in total benefits from the Blue Cross coverage. Thrasher further testified that if Blue Cross had maintained no contingency reserve, Blue Cross would have been required to discontinue the C-Plus program or would have been required to substantially increase premiums under the C-Plus program in order to generate sufficient income to cover the cost of paying the benefits under that program.
This was not controverted by the plaintiffs. Therefore, the undisputed facts before the trial court, when it certified this as a class action and designated the class, showed that the original plaintiffs' claims could not have been typical of the claims of a class that "[has] suffered and continue[s] to suffer economic harm as a result of the illegal actions of [Blue Cross] . . . in [regard to] the excessive premiums charged." All of the original plaintiffs benefited from the alleged actions of Blue Cross.
 "To present a justiciable case or controversy, the individual plaintiff must have standing to sue; to have standing, the individual must allege an injury directly arising from or connected with the wrong alleged. The standing requirement applies whether the plaintiff sues individually or on behalf of a class. A person who has not been injured may not sue individually or on behalf of the class, because he or she lacks standing. When there has been a class wrong, any person who was injured has standing to sue. When the action is brought on behalf of a class, the standing requirement is not changed, but [another] dimension is added — the plaintiff must have capacity to raise [common issues on behalf of others]."
1 Newberg On Class Actions, p. 190 (1977). (Emphasis added.)
The United States Supreme Court has repeatedly held that " 'a class representative must be part of the class and "possess the same interest and suffer the same injury" as the class members.' " General Telephone Co. of the Southwest v. Falcon,457 U.S. 147, 156, 102 S.Ct. 2364, 2370, 72 L.Ed.2d 740 (1982), quoting East Texas Motor Freight System, Inc. v. Rodriguez,431 U.S. 395, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977), quotingSchlesinger v. Reservists Committee To Stop The War,418 U.S. 208, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974).
Eight additional parties were added as plaintiffs by amendments to the complaint. The beginning paragraph of each amendment, adding these plaintiffs, stated that the complaint was being amended "by adding the following parties as Plaintiffs." Six of the added plaintiffs were individuals: Dennis J. Walford (changed by amendment to "Lawford"), Danny Belcher, Rachel Parrish, Deborah Coleman, Martha Rowe, and Miles Jackson. The paragraphs adding each of these plaintiffs read: "New Plaintiff [name] is over the age of nineteen (19) years and is a resident of [name of county], Alabama, and a subscriber to a health care plan of [Blue Cross]." Two of the added plaintiffs were corporations: Stallworth Timber Company and ABC Enterprises, Inc. The paragraphs adding each of these read: "New Plaintiff [name], an Alabama Corporation, a subscriber to a health care *Page 475 
plan of [Blue Cross]." There was no allegation that any added party was suing in a representative capacity, that their claims were typical of the claims of the entire class, or that they could fairly and adequately protect the interests of the class. Rule 23(a), A.R.Civ.P; Rowan v. First Bank of Boaz, supra.
Rule 20(a), A.R.Civ.P., provides, in pertinent part, as follows:
 "All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction [or] occurrence, . . . and if any question of law or fact common to all these persons will arise in the action. . . . A plaintiff . . . need not be interested in obtaining . . . all the relief demanded. Judgment may be given for one or more of the plaintiffs according to their respective rights to relief. . . ."
(Emphasis added.)
Therefore, the new plaintiffs could have been joined even if they were seeking only individual relief against Blue Cross. Rule 23(a) provides that one or more members of a class may sue as representative parties on behalf of all "only if" the claims of the representative parties are typical of the claims of the class and the representatives will fairly and adequately protect the interests of the class. The proponent of the class action status bears the burden of alleging this as to each party who purports to represent a class, just as he bears the burden of proof as to each of the four (4) prerequisites of Rule 23(a). Rowan v. First Bank of Boaz, supra.
At oral argument, the plaintiffs contended that their amendments adding parties plaintiff related back to the filing of the original complaint under Rule 15(c), A.R.Civ.P., which provides the following in the only portion that could possibly be relevant:
 "Whenever the claim . . . asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back. . . . An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied. . . ."
(Emphasis added.)
Even if the allegations were procedurally adequate, the plaintiffs totally failed to introduce any evidence that Lawford, Belcher, Jackson, Parrish, Coleman, Rowe, Stallworth Timber Company, or ABC Enterprises, Inc., had claims that were typical of the claims of the class and that they would fairly and adequately protect the interests of the class.
The uncontroverted evidence shows: (1) that Coleman had no Blue Cross coverage; (2) that Rowe was a member of a self-insured plan, as were original plaintiffs Ms. Sanderson and Ms. Mobley, and, therefore, could not be representative of, or protect the interests of, the class described in the complaint, for the same reason that Ms. Sanderson and Ms. Mobley could not; and (3) that Jackson had Medicare Complimentary C-Plus coverage, and, therefore, could not be representative of, or protect the interests of, the class described in the complaint, for the same reason that Mr. Sanderson could not.
There is no evidence that the other added plaintiffs are representative of the class described in the complaint or could fairly and adequately protect the interests of the class described in the complaint. The burden to prove each of the four (4) prerequisites of Rule 23(a) is on the proponents of the class action (the plaintiffs in this case), and they have failed to meet this burden. Rowan v. First Bank of Boaz, supra.
On the same date that the trial court entered its order on class action status, it dismissed those named plaintiffs who were covered under self-insured plans administered by Blue Cross. There is uncontradicted evidence that this includes Ms. Sanderson, Ms. Mobley, and Ms. Rowe. No appeal has been taken from this action of the trial court.
We cannot determine from the pleadings or the record whether any of the other plaintiffs were "covered under self-insured funds administered by Blue Cross." We do *Page 476 
know that the group health benefit plans of which Dennis J. Walford and Parrish are participants and the health benefit plans maintained by Stallworth Timber Company and ABC Enterprises, Inc., are employee welfare benefit plans governed by the Employee Retirement Income Security Act of 1974 ("ERISA"); but there is no evidence to show whether these were self-insured plans. There is no evidence of what type plan Dennis Lawford is covered under.
Who were the remaining plaintiffs at the time of the class designation? Did those remaining plaintiffs, other than Mr. Sanderson, sue in a representative capacity; and, if so, are they representative of the class described in the complaint? Can the remaining plaintiffs fairly and adequately protect the interests of the class described in the complaint? The burden of presenting sufficient evidence by which these questions could be answered rested with the proponents of class designation — the plaintiffs in this case. They have not met their burden.
If we could assume, and we cannot, that the remaining plaintiffs sue in a representative capacity and are representative of the class described in the complaint (those who "have suffered and continue to suffer economic harm as a result of the illegal actions of [Blue Cross] . . . in [regard to] the excessive premiums charged"), we still could not affirm the trial court's designation of the class. In the complaint and its amendments, the remaining plaintiffs are designated as "subscriber[s] to a health care [service] plan of Blue Cross"; and the original plaintiffs brought this action on behalf of "all members of the class composed of all subscribers for health care benefits provided by Blue Cross." The trial court designated the class as:
 "All subscribers, policyholders, holders of certificates of coverage, and members or participants of group coverage directly issued and underwritten by [Blue Cross] on March 31, 1988."
There was no allegation in any pleading and no proof that any of the remaining plaintiffs sued in a representative capacity, that their claims are typical of the claims of the class, or that they would fairly and adequately protect the interests of "[a]ll . . ., policyholders, holders of certificates of coverage, and members or participants of group coverage directly issued and underwritten by [Blue Cross] on March 31, 1988."
Likewise, even if it should ultimately be proven, and it has not been, that some of the remaining plaintiffs could fairly and adequately protect the interests of the limited class of "[a]ll subscribers . . . of group coverage directly issued and underwritten by [Blue Cross] on March 31, 1988," it is undisputed that some of them — Mr. Sanderson and Coleman — could not.
 "It is settled that a plaintiff cannot be an adequate representative if she or he has a conflict of interest with class members. . . . The conflict that will prevent a plaintiff from meeting the Rule 23(a)(4) prerequisite must be fundamental. It must go to the specific issues in controversy."
4 Newberg On Class Actions pp. 47-49, § 22.21 (1985).
Mr. Sanderson and Coleman's conflict with those subscribers who are alleged to be injured by Blue Cross's contingency reserve goes to the specific issue in controversy — the size of the contingency reserve from which Mr. Sanderson and Coleman and members of their class have benefitted. Coleman and Mr. Sanderson could not adequately represent those class members who have been injured, for they would have a conflict of interest.
The trial court rushed to judgment in designating the class. The designation was made without any motion having been filed asking for the class to be designated and without any evidence being presented to satisfy the prerequisites for designation set out in Rule 23(a).
Rule 23(b) provides: "An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition: [subsection (1)(A) or (1)(B) or (2) or (3) of Rule 23(b) is satisfied]." In Rowan v. First Bank of Boaz,476 So.2d at 46, Justice Almon wrote: *Page 477 
 "All of the above prerequisites [of Rule 23(a)] must be satisfied before consideration of the additional criteria set out in (b) of Rule 23. Huff v. N.D. Cass Company of Alabama, 468 F.2d 172
(5th Cir. 1972)."
The trial court ordered "that this case proceed hereafter as a class action under Rule 23(b)(2)." Rule 23(b)(2) provides for class certification if: "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."
The trial court rushed to judgment in certifying this as a class action and, in doing so, abused its discretion in certifying this as a class action under Rule 23(b)(2); that abuse of discretion requires this Court to reverse the trial court's order certifying this "as a class action under Rule 23(b)(2)."
The trial court is directed to set aside its order designating a class and certifying this as a class action.
 SUMMARY JUDGMENT
The trial court entered the following "JUDGMENT, ORDER AND DECREE":
 "As to the Motion for Summary Judgment of Blue Cross, the Court is of the opinion that there is no genuine issue of material fact in dispute in this case. The basis of the plaintiffs' claim in this case is, in simple terms, that Blue Cross has generated, and is holding surplus (or as Blue Cross calls it 'contingency reserves') in excess of the amounts authorized by law. The law, as applicable to this case, authorizes Blue Cross to hold 'contingency reserves' equal to no more than 4 months of its most recent 12 months of claims and operating expenses. From the uncontroverted evidence before this Court, Blue Cross has included within its definition of 'claims and operating expenses' the claims and expenses of self-insured funds administered by Blue Cross. Under these self-insured administration contracts, Blue Cross assumes no underwriting risk. It is significant that Blue Cross has admitted that 'contingency reserves' serve one purpose — to protect its subscribers from underwriting losses.
Accordingly, this Court is of the opinion that the claims and expenses of self-insured funds administered by Blue Cross cannot be considered in determining the proper level of surplus which can be held by Blue Cross. This is a matter of law. Having concluded that Blue Cross can, as a matter of law, hold surplus or 'contingency reserves' at a level measured only by its 'claims and operating expenses' attributable to its underwritten lines of business, the Court, on authority of Adam v. Shelby County Commission, 415 So.2d 1066 (Ala. 1982), holds that the plaintiffs are entitled to judgment as a matter of law on the question of whether Blue Cross may hold a portion of its surplus or 'contingency reserves' as a reserve for claims and operating expenses of self-insured funds administered by Blue Cross and upon which Blue Cross has no underwriting risk."
(Emphasis in original.)
This order is curious indeed.
Blue Cross is a nonstock corporation organized not for profit, and for the purpose of establishing, maintaining, and operating a health care service plan under which health care services are furnished to that segment of the public who become subscribers to the plan (Ala. Code 1975, § 10-4-100) pursuant to contracts, which are subject to the restrictions contained in Article 6, Chapter 4, Title 10 of the Alabama Code. "Such contracts may provide for more than one class of services or benefits . . . and may specify the charge or dues required to be paid for such services or benefits," and the form of the contract must be filed with the Commissioner before the contract is issued or sold. § 10-4-106. The first sentence of §10-4-109 provides:
 "The rates, charges, fees and dues to be paid by the public for benefits under said health [care] service plan and for contracts or certificates covering same shall not be unreasonably high or excessive, shall be adequate to meet the liability assumed under such contracts *Page 478 and all expenses in connection therewith, shall be adequate for the safeness and soundness of the corporation and, shall take into account past and prospective loss experience."
(Emphasis added.)
Any changes in rates, charges, fees, and dues must be approved by the Commissioner, who shall approve rates, charges, fees, and dues that are consistent with the standards and factors set forth in the first sentence of § 10-4-109 and who shall disapprove rates, charges, fees, and dues that are not consistent with those standards. Therefore, the Commissioner has the responsibility to assure that the "rates, charges, fees and dues" charged by Blue Cross are "not . . . unreasonably high or excessive"; are "adequate to meet the liability assumed under such contracts and all expenses"; and are "adequate for the safeness and soundness of [Blue Cross]." In doing so, the Commissioner must "take into account past and prospective loss experience" of Blue Cross. § 10-4-109.
On April 18, 1986, a Blue Cross contingency reserve document was approved by the Insurance Department. The contingency reserve is the difference between Blue Cross's assets and its liabilities.
How the trial court could have concluded that "[t]he law . . . authorizes Blue Cross to hold 'contingency reserves' equal to no more than 4 months of its most recent 12 months of claims and operating expenses" is beyond the comprehension of this Court. The law, § 10-4-109, authorizes Blue Cross to charge rates, charges, fees, and dues that are not unreasonably high or excessive, but are adequate to meet the liability assumed under health care service contracts and all expenses in connection therewith and for the safeness and soundness of Blue Cross. The law sets no "cap" of 4 months of the most recent 12 months of claims and operating expenses. Who determines the rates, charges, fees, and dues that Blue Cross can charge? The Commissioner makes that determination, because he is charged with the duty of approving only those rates, charges, fees, and dues that are not unreasonably high or excessive, but are adequate to meet the liability assumed under contracts and all expenses in connection therewith and for the safeness and soundness of Blue Cross, and with the duty of disapproving "such rates, charges, fees and dues which are not consistent with [those] standards and factors." § 10-4-109.
Harland Dyer, a consulting actuary for the Insurance Department during the time since 1981, which encompasses the administrations of two Democratic Governors and one Republican Governor, swore to the following:
 "The adequacy of reserves in any insurance company, including Blue Cross-Blue Shield of Alabama, is an essential factor in any determination of the safeness and financial soundness of the company. Adequate reserving is required for the protection of the policyholders and the public.
 "I am familiar with Section 10-4-109, Code of Alabama 1975, and review the adequacy of the rates, charges, fees and dues of Blue Cross-Blue Shield of Alabama. However, the determination of the adequacy of such rates, charges, fees and dues under the aforementioned section cannot be achieved without taking into account the adequacy of the company's reserve levels." (R. 844-45)
Likewise, how the trial court could have found "[as a matter of law] that the claims and expenses of self-insured funds administered by Blue Cross cannot be considered in determining the proper level of surplus which can be held by Blue Cross," is beyond the comprehension of this Court.
In his supplemental affidavit (filed February 17, 1989, according to the case action summary sheet) (R. 1541), Dyer swore as follows:
 "My work as a consulting actuary for the [Insurance] Department has included actuarial reviews of the contingency reserve of Blue Cross. . . . The contingency reserve is the difference between Blue Cross's assets and its liabilities, and is reported on line 17 of page 3 of the NAIC Annual Statement Form for Hospital, *Page 479 
Medical and Dental Service or Indemnity Corporations as 'unassigned funds.'
 "In my capacity as a consulting actuary for the [Insurance] Department, I participated in discussions with officials from the [Insurance] Department and Blue Cross, and rendered advice to the [Insurance] Department, that resulted in the formulation of a two-to-four month guideline, approved by the [Insurance] Department on April 18, 1986, by which to determine the adequacy or redundancy [excessiveness] of Blue Cross's contingency reserve, or unassigned funds, as reported on line 17, page 3, of the NAIC Annual Statement Form.
 "The 1986 guidelines provide that Blue Cross will seek to maintain the level of its contingency reserve within a target range sufficient to cover two to four months of the most recent twelve months of claims and operating expenses. The 1986 guidelines also set out various courses of action that Blue Cross will follow in the event that its contingency reserve rises above or falls below the two-to-four month range. Should the reserve exceed four months, the guidelines state that Blue Cross will, after consultation with the [Insurance] Department, decrease rates or increase the level of benefits, among other alternatives; should the reserve fall below two months, the guidelines state that Blue Cross will, after consultation with the [Insurance] Department, increase rates, reduce benefit levels, or, if indicated, cancel certain categories of coverage, among other alternatives.
 "During the discussions leading up to the establishment of the 1986 guidelines, I was aware, and continue to be aware, that Blue Cross engages in various self-insured lines of business, such as Administrative Service Contracts. In these self-insured lines, Blue Cross undertakes to process and pay all covered claims from Blue Cross's own assets. The claims are paid either directly to providers pursuant to Blue Cross's provider contracts or to subscribers directly in the case of subscriber payable claims. In all such cases, Blue Cross pays such claims by checks drawn against its own accounts, and subsequently looks to the self-insuring employer or plan sponsor pursuant to the terms of the Administrative Service Contract between Blue Cross and the employer or plan sponsor to recover the costs of claims paid plus any applicable administrative service fees.
 "During the discussions leading up to the formulation of the 1986 guidelines, and since that time, I have been aware, and have been of the opinion, that claims paid by Blue Cross on behalf of self-insured employers under Administrative Service Contracts are, and should be, treated as part of Blue Cross's 'claims and operating expenses' within the meaning of the 1986 guidelines, and are, and should be, included in the determination of the two-to-four months of the most recent twelve months of claims and operating expenses. It was not my understanding, then or now, that the two-to-four month range should be determined on the basis of two to four months of claims and expenses on behalf of the insured lines of business to the exclusion of self-insured lines.
 "Because Blue Cross uses its own funds in payment of claims under its Administrative Service Contracts for its self-insured lines, it has a possibility of liability due to claims which must be considered in assessing its overall financial stability and viability by regulatory officials. It is, therefore, both appropriate and necessary in using the two-to-four-month guideline as a gauge of Blue Cross's financial stability and viability to include its self-insured line administered on an Administrative Service Contract basis as a part of its total measure of claims and operating expenses.
 "I am aware that some insurers and third party administrators enter into contracts with self-insured employers or other plan sponsors, such contracts being denominated Administrative Service Only or 'ASO' contracts pursuant to which the insurer [or] third party administrator obtains signature or draft authority against the employer's or plan sponsor's accounts. *Page 480 
Under such ASO contracts, the insurer or third party administrator pays claims using the employer's or other sponsor's funds and does not assume a possibility of liability or risk of loss due to claims. To my knowledge, with the exception of its administration of the Medicare program, Blue Cross does not engage in ASO business." (R. 940-42)
Having considered the 1544 pages of the original record, the 9 pages of the first and the 55 pages of the second supplemental records, and having reviewed §§ 10-4-100 through10-4-115 (the entire article applicable to "Health Care Service Plans"), we cannot determine how the trial court concluded "as a matter of law" that Blue Cross could hold a contingency reserve measured only by the claims and operating expenses attributable to its underwritten lines of business. It may well be that Blue Cross "has put an unjustifiable reserve burden on the subscribers of the underwritten business," as testified to by Charles Ray Skinner of Monroeville, a retired insurance examiner with the State of Alabama, in his affidavit (Supplemental R. 8), but that is not determinative of the case before us. Skinner swears:[2]
 "It appears to me, as an examiner and from the review of the [contingency reserve agreement and premium tax returns, that Blue Cross] has used an inflated amount of claims and expenses to determine the minimum and maximum of reserves to be allowed under the April 1986 letter [contingency reserve agreement?]. That is to say, [Blue Cross] used the gross claims and expenses to determine the contingency reserve, rather than claims and expenses of subscribers only.
". . . .
 ". . . It is unnecessary and improper to include claims and expenses for services rendered for sel-insured plans of other corporations."
Skinner does not specify what he means by "subscribers only" in his affidavit. Each plaintiff, including those covered by self-insured plans and C-Plus Medicare supplement plans, identified himself or herself as a "subscriber" to a health care service plan of Blue Cross.
Skinner does not specify why it is "improper to include claims and expenses for services rendered for self-insured plans." The contingency reserve document did not limit the claims and expenses to claims and expenses of underwritten plans. Dyer, who helped formulate the plan with the Insurance Department and Blue Cross, swore that it was necessary to include the claims and expenses of self-insured plans to assure the stability and viability of Blue Cross. It could well be that, as Skinner asserted, the contingency reserve plan does put an "unjustifiable reserve burden" on some subscribers of underwritten business, because the record shows that subscribers to self-insured plans receive the benefit of the contingency reserve plan without contributing to that plan. The record also shows that subscribers to the C-Plus Medicare Complimentary plan have received very substantial benefits from the contingency reserve plan without contributing to that plan. However, that is not determinative of the case before us. The case before this Court and the case that was before the trial court involved the excessiveness vel non of the entire contingency reserve. There is no way that the trial court could have determined from the record that the entire contingency reserve of Blue Cross was excessive, as a matter of law, without abusing its discretion.
As a matter of law, Blue Cross cannot require the public to pay rates, charges, fees, and dues that are unreasonably high or excessive. We cannot, and the trial court could not with the evidence before it, hold that, as a matter of law, the manner of computing the contingency reserve requires *Page 481 
the public to pay rates, charges, fees, and dues that are unreasonably high or excessive. At best, this is a disputed fact question that needs further development. The complaint asked the court to "declare an amount which may be held by Blue Cross as reserve and/or unassigned profits which is reasonably necessary to insure the solvency of [Blue Cross] and the compliance of [Blue Cross] with Alabama statutes."
Dyer swears that in order to assure the financial stability and viability of Blue Cross, which must be considered according to § 10-4-109 ("the safeness and soundness" of Blue Cross), it is necessary that the self-insured line of claims administered by Blue Cross be included in order to determine whether the rates, charges, fees, and dues are unreasonably high or excessive. The plaintiffs contended in their briefs and during oral argument that Blue Cross, as a matter of law, had no legal right to administer self-insured plans, since Blue Cross is purely a statutory creature, whose purpose and whose powers are all derived from §§ 10-4-100 through 10-4-115, Blue Cross Blue Shield of Alabama v. Protective Life Insurance Co.,527 So.2d 125 (Ala.Civ.App. 1987); and, therefore, that because it is illegal for Blue Cross to administer such plans, the claims and operating expenses of such plans cannot be included in determining the contingency reserve. Section 10-4-100
provides that health care service corporations can be organized for the purpose of establishing, maintaining, and operating health care service plans under which health care services are furnished to those in the public who become subscribers to such plans pursuant to contracts. The corporations organized may then enter into contracts with the public for benefits under its health care service plans, subject to the restrictions contained in Article 6, Chapter 4, Title 10. The contracts may provide for more than one class of services or benefits and may specify the charges or dues required to be paid for such services or benefits. § 10-4-106.
This contention of the plaintiffs is not covered by the pleadings; and the case gets "curiouser and curiouser," for the plaintiffs now seek to invalidate, among others, the Financial Agreement between Blue Cross and the Alabama State Employee's Insurance Board and the Employees Health Benefit Plan for employees of Kleinert, Inc., which happen to be two of the plans included in the record, for they were plans participated in by three of the plaintiffs who brought this action. This Court certainly will not invalidate those plans when the Alabama State Employee's Insurance Board and Kleinert, Inc., are not parties to this action and were not adequately represented in this action.
From reading Ala. Code 1975, §§ 10-4-100 through 10-4-115, we cannot say that Blue Cross has no legal right to administer self-insured plans. If that remains the plaintiffs' contention, the plaintiffs must amend their complaint to allege this and must make certain that those persons, corporations, governmental entities, and others who have entered into contracts with Blue Cross for Blue Cross to administer self-insured plans, are made parties to this action or have their interests adequately represented in this action.
There are genuine issues of material fact that must be resolved by the trier of fact, and the trial court rushed to judgment and improperly entered partial summary judgment. The court is directed to set aside its partial summary judgment for the plaintiffs on the issue of liability.
 OTHER GROUNDS IN PETITION FOR THE WRIT OF MANDAMUS
Having determined that the trial court improperly designated a class, improperly certified this action as a class action, and improperly entered summary judgment, we must determine whether the Circuit Court of Coffee County, Elba Division, should be directed to dismiss the case for failure to exhaust administrative remedies or whether it should be directed to conduct further proceedings.
The action in the trial court is a declaratory judgment action against Blue Cross. Blue Cross is a domestic corporation that was doing business by agent in *Page 482 
Coffee County at the time the cause of action arose. In accordance with Ala. Code 1975, § 6-3-7 ("a domestic corporation may be sued in any county in which it does business by agent or was doing business by agent at the time the cause of action arose"), Blue Cross could be sued in Coffee County.
As we understand the plaintiffs' action, it is based upon an allegation that Blue Cross's contingency reserve is in excess of an amount adequate for Blue Cross to meet the liability assumed under health care service plans and all expenses in connection therewith and is in excess of an amount adequate for the safeness and soundness of Blue Cross, taking into account past and prospective loss experience; and upon the allegation, therefore, that the plaintiffs, as subscribers to health care service plans of Blue Cross, paid rates, charges, fees, and/or dues that were "unreasonably high or excessive" and therefore violated Ala. Code 1975, § 10-4-109. The plaintiffs seek a declaration that they (and, presumably, the class that they may ultimately be designated to represent) have paid unreasonably high or excessive rates, charges, fees, and dues, and seek a refund of any amount that may ultimately be determined to be excessive. This may be done by a declaratory judgment action filed in the Circuit Court of Coffee County.
It is true that the Legislature has created a Department of Insurance (Ala. Code 1975, § 27-2-1) and has provided for a commissioner of insurance, who shall be selected with special reference to his training and experience and who shall be appointed by the Governor (Ala. Code 1975, § 27-2-2). The commissioner of insurance has the powers and duties provided by Ala. Code 1975, § 27-2-7, and "such additional powers and duties as may be provided by other laws of this state." Ala. Code 1975, § 27-2-7(9). In addition to the powers and duties listed in the Alabama Insurance Code (Title 27), the Commissioner has duties and powers prescribed in Ala. Code 1975, Article 6, Chapter 4, of Title 10, especially those powers and duties specified in §§ 10-4-106, -109, -110, -111, -112, -113, and -114. Included within those powers and duties are the power and duty to approve rates, charges, fees, and dues that are consistent with, and to disapprove rates, charges, fees, and dues that are not consistent with, the requirement that "rates, charges, fees and dues to be paid by the public for benefits under [health care service plans] and for contracts or certificates covering same shall not be unreasonably high or excessive, shall be adequate to meet the liability assumed under such contracts and all expenses in connection therewith, shall be adequate for the safeness and soundness of the corporation and shall take into account past and prospective loss experience." § 10-4-109.
Blue Cross argues that the Circuit Court of Coffee County, Elba Division, has no jurisdiction to try this cause until the plaintiffs have exhausted their administrative remedies. Blue Cross argues that the procedure for conducting an administrative proceeding based on claims such as the plaintiffs make has been provided for in Departmental Regulation No. 65 promulgated by the Commissioner, because that regulation provides not only for hearings under the Alabama Insurance Code,[3] but "also for any hearing held by the Commissioner under his discretionary power to hold hearings," which Blue Cross says would be broad enough to cover hearings under § 10-4-109.
Plaintiffs contend that Regulation No. 65 is not applicable because of the provisions of § 10-4-115 ("[n]o statute . . . applying to insurance companies shall be applicable to [health care service corporations] . . . or to any contract made by such corporation[s] unless expressly mentioned in this article and made applicable"). Plaintiffs further contend that the Commissioner has set the rates, charges, fees, and dues that *Page 483 
Blue Cross can charge by approving the contingency reserve plan and that Blue Cross is collecting rates, charges, fees, and dues in excess of what has been approved by the Commissioner.
We need not decide whether Departmental Regulation No. 65 is applicable in determining or challenging the rates, charges, fees, or dues to be charged or that were charged by health care maintenance corporations incorporated and operating under the provisions of Ala. Code 1975, Article 6, Chapter 4, Title 10.
The Commissioner can promulgate reasonable rules and regulations (§§ 27-2-17(a) and 27-2-7(9)) to assure that rates, charges, fees, and dues to be paid or that are being paid by the public for benefits under health care service plans and contracts or certificates covering the same are not unreasonably high or excessive but are adequate to meet the liability assumed under such contracts and all expenses in connection therewith and adequate for the safeness and soundness of the health care service corporation incorporated and operating under Ala. Code 1975, Article 6, Chapter 4, Title 10. However, this action is not a rate case. In this action, plaintiffs contend that the Commissioner has acted in setting the appropriate rates, by approving the contingency reserve plan, and that Blue Cross has charged rates in excess of the amount that has been approved by the Commissioner in the contingency reserve plan. Plaintiffs also seek a refund for the amount determined to have been an excessive charge by Blue Cross. The plaintiffs' claims can be presented in a declaratory judgment action filed in any county in which the health care service corporation does business by agent or was doing business by agent when the action was filed, without first having an administrative hearing before the Commissioner under the Alabama Administrative Procedure Act, because the Commissioner would not have the power to grant all of the relief sought.
With this case in its present posture, we cannot hold that the trial court abused its discretion in failing to remove this action in accordance with Ala. Code 1975, § 6-3-21.1 ("Change or transfer of venue for convenience of parties and witnesses or in interest of justice").
The trial court may now determine whether the plaintiffs, or any of them, who have not been dismissed may sue as representative parties. They may do so only if "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, . . . and (4) the [plaintiffs] will fairly and adequately protect the interests of the class." Rule 23(a). In this case, the plaintiffs bear the burden of alleging and proving that these requirements are met.
If the plaintiffs may sue as a class, the class must be identified with particularity, in accordance with the allegations of the complaint and proof of the four prerequisites to class certification in Rule 23(a).
If the prerequisites of Rule 23(a), A.R.Civ.P., are satisfied, the trial court may allow this action to proceed as a class action if there is proof of any one of the four conditions specified in Rule 23(b).
1900470 WRIT GRANTED. The trial court is directed to set aside its order designating a class and certifying this as a class action and to set aside its partial summary judgment for the plaintiffs on the issue of liability. All other relief sought by the petitioner is denied.
190471 APPEAL DISMISSED.
HORNSBY, C.J., and MADDOX, SHORES, ADAMS, STEAGALL, KENNEDY and INGRAM, JJ., concur.
[1] Pursuant to this Court's opinion in Ex parte Weaver,570 So.2d 675 (Ala. 1990), the Commissioner's appeal was dismissed by the Attorney General. The Commissioner was realigned as a party plaintiff.
[2] For all that appears in the case action summary sheets or any other part of the record, Skinner's affidavit was not filed until four months after the motion for summary judgment was granted. However, because the trial court granted the plaintiffs' motion to supplement the record to include this affidavit, we will assume that the trial court had the affidavit before it and considered it in ruling on the motion for summary judgment; therefore, we have considered it.
[3] Alabama Code 1975, § 10-4-115, provides that "no statute of this state applying to insurance companies shall be applicable to [health care service corporations] . . . or to any contract made by such corporation unless expressly mentioned in [Ala. Code 1975, Article VI, Chapter 4, Title 10] and made applicable. . . ." *Page 484