717 So.2d 342 (1997)
Ex parte FIRST NATIONAL BANK OF JASPER.
(Re Henry Dale ODOM
v.
FIRST NATIONAL BANK OF JASPER).
1961542.
Supreme Court of Alabama.
December 16, 1997.
Hobart A. McWhorter, Jr., and Matthew H. Lembke of Bradley, Arant, Rose & White, Birmingham, for petitioner.
*343 Garve Ivey, Jr., of King, Ivey & Junkin, Jasper, for respondent.
COOK, Justice.
First National Bank of Jasper ("the Bank") petitions for a writ of mandamus directing Judge James Moore, judge of the Fayette County Circuit Court, to vacate an order "conditionally" certifying an action against the Bank as a class action pursuant to Ala. R. Civ. P. 23. We grant the petition.
This action began on May 24, 1994, when Henry Dale Odom filed a complaint in the Fayette County Circuit Court against the Bank. Also named as defendants were John Crump Motors, Inc., d/b/a/ John Crump Mazda ("Crump"); and Protective Life Insurance Company. Odom alleged that he had purchased an automobile from Crump, pursuant to an installment contract that "included charges for credit life insurance premiums"; and that "the amount of insurance actually purchased for [his] benefit and provided by the Defendants was far in excess of an amount sufficient to protect the unpaid indebtedness... under his installment contract." He sought compensatory and punitive damages under theories of breach of contract, fraud, and the tort of outrage, and equitable relief under a theory of unconscionability. In addition, he sought certification of a class composed of "persons who ... bought credit life insurance through the Defendants."
On April 22, 1997, Odom filed his own affidavit "in support of conditional class certification." Three days later, the Bank filed a "notice of deposition of plaintiff," "first interrogatories and requests for production," and "first requests for admissions to plaintiff." However, on June 19, 1997, before the deposition was conducted; before a response to the other discovery requests was filed; and before any hearing on class certification was held, the trial court entered an "order of conditional certification," by which the "action [was] conditionally certified under [Ala. R. Civ. P.] 23(b)(3) as to all claims for money damages and [under] Rule 23(b)(2) as to all claims for injunctive relief." (Emphasis added.)
On June 19, 1997, the Bank filed this petition for a writ of mandamus directing the trial judge to vacate his order of conditional certification. The Bank stated:
"The Bank submits this petition because the trial court ... conditionally certified a class without a motion for conditional certification ever having been filed, and without conducting a hearing, thus denying the Bank an opportunity to be heard on the certification issue.... The circumstances surrounding the entry of the certification order comport with neither the requirements of Rule 23, nor the requirements of fundamental fairness guaranteed under the Due Process Clause of the United States Constitution."
Odom, however, argues that Rule 23(c)(1) "expressly sanctions conditional class certification." Answer and Brief in Response to Petition for Writ of Mandamus, at 9. Specifically, Rule 23(c)(1) provides: "As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained. An order under this subdivision may be conditional, and may be altered or amended before the decision on the merits." (Emphasis added.) The Bank urges us to use this "opportunity to put to rest the widespread uncertainty as to whether `conditional' class certification is an allowable procedure under the Alabama Rules of Civil Procedure." Petition for Writ of Mandamus, at 1-2.
As the Bank correctly points out, the practice of granting  in a summary or ex parte manner  motions for "conditional certification," has become commonplace throughout Alabama. Indeed, this Court is today deciding no fewer than four cases  besides this one  involving this precise issue. See Ex parte American Bankers Life Assurance Co. of Florida, 715 So.2d 186 (Ala.1997); Ex parte Citicorp Acceptance Co., 715 So.2d 199 (Ala.1997); Ex parte Equity National Life Insurance Co., 715 So.2d 192 (Ala.1997); and Ex parte Mercury Finance Corp. of Alabama, 715 So.2d 196 (Ala.1997). The Bank argues that this procedure violates the rule set forth in General Telephone Co. of the Southwest v. Falcon, 457 U.S. 147, 102 S.Ct. *344 2364, 72 L.Ed.2d 740 (1982), and "the requirements of fundamental fairness guaranteed under the Due Process Clause of the United States Constitution."
This case and those other four like it, cited above, actually require the Court to address two problems involving class-action practice. The first is to determine whether the practice of certifying classes "conditionally," as was done in this case, complies with Rule 23 and with due process guarantees. If we answer that question in the negative, then we must then address the incentive that gave rise to the practice.

I. Conditional Certification
The place to begin our analysis of this aspect of the case is with the Rule itself and an examination of the language on which Odom relies. Rule 23(c)(1) provides that "[a]n order ... may be conditional." (Emphasis added.) Furthermore, Rule 23(d) provides that in class actions "the court may make appropriate orders: (1) determining the course of proceedings or prescribing measures to prevent undue repetition or complication in the presentation of evidence or argument; ... (3) imposing conditions on the representative parties or on intervenors;... [or] (5) dealing with similar procedural matters." It is well settled that these provisions authorize trial courts to certify "conditional" or "temporary" classes under certain conditions.
For example, a conditional class may properly be certified to operate "as long as no potential conflicts materialize, provided common issues alleged are borne out by discovery, provided the case remains manageable, provided suitable notice can be given, or the like." 2 Newberg on Class Actions § 7.33 (3d ed.1992). Other examples are those cases in which "defendants ... stipulate or determine not to oppose class certifications." Id. § 7.10 (emphasis added) (footnotes omitted).
Perhaps the most familiar example of this latter type is the certification of "conditional" or "temporary" classes for settlement purposes. "When the court has not yet entered a formal order determining that the action may be maintained as a class action, the parties may stipulate that it be maintained as a class action for the purpose of settlement only." Id. § 11.27, at 11-40 (footnote omitted). "In these circumstances, courts often accommodate the parties by establishing temporary classes for settlement purposes in connection with the sending of notices to class members under Rule 23(e)." Id. The certification of a "temporary settlement class [may be viewed] as nothing more than a tentative assumption indulged in by the court to facilitate the amicable resolution of the litigation, rather than as some sort of conditional class ruling under Rule 23 criteria." Id. at p. 11-50 (emphasis added). Newberg continues:
"The actual class ruling is deferred in these circumstances until after hearing on the settlement approval, following notice to the class. At that time, the court in fact applies the class action requirements to determine whether the action should be maintained as a class action and whether the class settlement should be approved. Viewed in this light, a court ruling creating a temporary settlement class at the request of the parties is not a formal class ruling. The court has not yet applied Rule 23 criteriaeither in a strict or a lax fashionso that the contention that use of this device undermines the proper application of class actions tests appears to miss the mark."
Id. (emphasis added) (footnote omitted).
Temporary settlement classes bear two significant characteristics. First, they are entered upon the agreement of the defendant. Second, they promote the strong policy favoring settlements. See id. at 11-44; In re Chicken Antitrust Litig. American Poultry, 669 F.2d 228, 238 (5th Cir.1982); In re PaineWebber Limited Partnerships Litig., 171 F.R.D. 104 (S.D.N.Y.), aff'd, 117 F.3d 721 (2d Cir.1997). Thus, as observed by In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litig., 55 F.3d 768 (3d Cir.), cert. denied sub nom. General Motors Corp. v. French, 516 U.S. 824, 116 S.Ct. 88, 133 L.Ed.2d 45 (1995), modified on other grounds, Amchem Prod., Inc. v. Windsor, *345 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997):
"[N]otwithstanding that there is an absence of clear textual authorization for settlement classes, many courts have indulged the stipulations of parties by establishing temporary classes for settlement purposes only. See, e.g., Mars Steel v. Continental Illinois Nat'l Bk. & Trust, 834 F.2d 677 (7th Cir.1987); Weinberger v. Kendrick, 698 F.2d 61 (2d Cir.1982), cert. denied, 464 U.S. 818, 104 S.Ct. 77, 78 L.Ed.2d 89 (1983); In re A.H. Robins Co., 880 F.2d 709, 738-39 (4th Cir.1989); In re Dennis Greenman Sec. Litig., 829 F.2d 1539, 1543 (11th Cir., 1978[1987]); Plummer v. Chemical Bank, 668 F.2d 654 (2d Cir.1982); In re Beef Industry Antitrust Litig., 607 F.2d 167, 173 (5th Cir.1979); Malchman v. Davis, 706 F.2d 426, 433-34 (2d Cir.1983); In re Taxable Mun. Bond Sec. Litig., [MDL-863, E.D. La., Nov. 15, 1994]; In re Silicone Gel Breast Implant Prod. Liab. Litig., [CV-92-P-10000-S., N.D. Ala., Sept. 1, 1994]; In re First Commodity Corp. of Boston, 119 F.R.D. 301, 306-08 (D.Mass.1987); In re Bendectin, 102 F.R.D. 239, 240 (S.D.Oh.1984), rev'd on other grounds, 749 F.2d 300 (6th Cir.1984); In re Mid-Atlantic Toyota Antitrust Litig., 564 F.Supp. 1379, 1388-90 (D.Md. 1983); In re Chicken Antitrust Litig., 560 F.Supp. 957, 960 (N.D.Ga.1980)."
55 F.3d at 786. Class certifications of the type involved in this case, however, are patently and fundamentally different from temporary settlement-class certifications. Here, certification was contested, rather than consensual; the order was entered without any analysis of the prerequisites of Rule 23(a) and (b); and the order was entered without notice to the defendant and without an opportunity for the defendant to be heard.
The scope of the trial court's duty to address these prerequisites was the subject of General Telephone Co. of the Southwest v. Falcon, 457 U.S. 147, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). In that case, the Supreme Court ordered the decertification of a class that had been certified based on allegations in the pleadings. Id. at 160-61, 102 S.Ct. at 2372. The issue defined by the Court was "whether ... Falcon, who complained that [his employer, General Telephone Company of the Southwest (`GTC')] did not promote him because he is a Mexican-American, was properly permitted to maintain a class action on behalf of Mexican-American applicants for employment whom [GTC] did not hire." Id. at 149, 102 S.Ct. at 2366 (emphasis added). In the complaint, Falcon sought to represent "`Mexican-American persons who are employed, or who might be employed, by [GTC] ..., who have been and who continue to be or might be adversely affected by the practices complained of herein.'" Id. at 151, 102 S.Ct. at 2367.
As to the Rule 23 prerequisites of commonality, numerosity, typicality, and adequacy of representation, the complaint alleged:
"There are common questions of law and fact affecting the rights of the members of this class who are, and who continue to be, limited, classified, and discriminated against in ways which deprive and/or tend to deprive them of equal employment opportunities and which otherwise adversely affect their status as employees because of national origin. These persons are so numerous that joinder of all members is impracticable. A common relief is sought. The interests of said class are adequately represented by Plaintiff. Defendant has acted or refused to act on grounds generally applicable to the Plaintiff."
457 U.S. at 151, n. 3, 102 S.Ct. at 2367, n. 3 (emphasis added). "The complaint contained no factual allegations concerning [GTC's] hiring practices." Id. at 150, 102 S.Ct. at 2367 (emphasis added). However, based on these allegations of compliance with Rule 23, the trial court certified a class composed not only of individuals who were employed by GTC, as was Falcon, but also of individuals who, unlike Falcon, had unsuccessfully "applied for employment." 457 U.S. at 152, n. 5, 102 S.Ct. at 2367, n. 5 (emphasis added).
Holding that Falcon's allegations of compliance with Rule 23 were insufficient to support the certification of a class composed of unsuccessful job applicants, the Court stated:

*346 "[Falcon's] complaint provided an insufficient basis for concluding that the adjudication of his claim of discrimination in promotion would require the decision of any common question concerning the failure of [GTC] to hire more Mexican-Americans. Without any specific presentation identifying the questions of law or fact that were common to the claims of [Falcon] and of the members of the class he sought to represent, it was error for the District Court to presume that [his] claim was typical of other claims against [GTC] by Mexican-American employees and applicants....
"....
"... The District Court's error in this case ... is the failure to evaluate carefully the legitimacy of the named plaintiff's plea that he is a proper class representative under Rule 23(a).... Sometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim, and sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question....
"... With the same concerns in mind, we reiterate today that a Title VII [Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq.] class action, like any other class action, may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied."
457 U.S. at 158-61, 102 S.Ct. at 2371-73 (emphasis added).
Falcon does not hold, nor do we, that a precertification evidentiary hearing is required in every caseor even in most cases. As Falcon explained, the "issues [may be] plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim." Id. at 160, 102 S.Ct. at 2372. Falcon also does not prohibit temporary or conditional settlement-class certifications.[1] In fact, most of the cases cited above as upholding that practice were decided after Falcon. However, as we also observed above, this case is fundamentally different, that is, in this case the certification was entered without notice to, or stipulation by, the Bank.
What Falcon does mean, however, is that compliance with "Rule 23 criteria ... cannot be presumed without analysis." Newberg, § 7.18, at pp. 7-65, 7-66. In other words, the trial court cannot simply "rel[y] on the `imagination' of [the putative representative's] counsel to provide solutions" to Rule 23 problems. In re Hotel Telephone Charges, 500 F.2d 86, 90 (9th Cir.1974). The court in each case must conduct its own analysis. Cf. Ex parte Green Tree Financial Corp., 684 So.2d 1302 (Ala.1996) (mandamus issued to decertify a class because the proponent failed to provide sufficient evidence of Rule 23 criteria); Ex parte Exide Corp., 678 So.2d 773 (Ala.1996) (same); Ex parte Blue Cross & Blue Shield of Alabama, 582 So.2d 469 (Ala.1991) (same).
The Bank contends that the ex parte certification order entered in this case essentially shifted the burdenwhich rests on the proponent of class certification, Rowan v. First Bank of Boaz, 476 So.2d 44, 46 (Ala.1985), to prove compliance with Rule 23to the Bank to demonstrate that the class should be de certified. We agree that practically, as well as theoretically, certification has changed the posture of this case and the positions of the respective parties. In this connection, the Bank argues that "such certifications ... restrict defendants' rights to contact and obtain information from putative class members, [through] informal discovery." Petition for Writ of Mandamus, at 13. "More fundamentally, the Bank is severely prejudiced by the class certification because," it continues, "the certification changes the Bank's relationship with thousands of its customers...." Id. at 13-14. Also, we judicially know that, as a practical matter, once an order has been entered, to the subject of that order attaches the intangible process of inertia, that is, something set in motion tends to *347 stay in motion until something stops it. See Webster's New International Dictionary of the English Language, Unabridged, "Inertia," 1272 (2d ed.1953).
At this time, we need not, and do not, determine whether ex parte certifications are invalid per se. We state only that such certifications will not satisfy the requirements of Rule 23, unless the proponent demonstrates a compelling reason for such a certification. Odom has not demonstrated such a reason in this case. On the contrary, as we shall discuss in Part II, there is no valid reason in this case for an order of this sort.

II. Reason for the Order
The reason for this summary procedure was set forth in the order itself, which stated in part:
"This action is one of a large number of cases pending in this Circuit which contain class allegations. These class actions, by their very nature, are more complex and demand an inordinate amount of the Court's time and resources. Many times these actions are brought against the same defendant in multiple State and Federal jurisdictions by different plaintiffs, resulting in a `race to the courthouse' for class certification. Unlike the Federal Courts, our State Courts have no procedure in place to address the problems that arise in multi-jurisdiction litigation."

(Emphasis added.)
This rationale echoes that stated by Truman and Eloise McIlwain, the respondents in Ex parte Citicorp Acceptance Co., 715 So.2d 199 (Ala.1997):
"[T]he conditional certification procedure is mandated by the abatement rule adopted by this Court in Ex parte [First Nat'l] Bank of Jasper, [675 So.2d 348 (Ala. 1995) (`FNB of Jasper I`) ]. Under [FNB of Jasper I ], when any trial court issues an order of class certification, it abates all other class action proceedings involving the same claims. If a trial court does not certify a case promptly, then another trial court may certify the same claims and abate the proceeding in the initial trial court. It is no coincidence that the Court of Civil Appeals decision in [Ex parte Voyager Guaranty Insurance Co., 669 So.2d 198 (Ala.Civ.App.1995),] came only a few months after this Court's decision in [FNB of Jasper I]. A prompt certification order is needed to protect the jurisdiction of the trial court while it engages in the ongoing assessment of whether it will enter a final judgment with a certified class. The lack of a conditional certification procedure would invite a `race for justice' where class discovery and class certification evidentiary hearings would be conducted in multiple courts until one issues an order of certification.

"[Since FNB of Jasper I], trial courts throughout this state have followed the conditional certification procedure to protect their jurisdiction.... This Court should remember that in Alabama, there is no procedure for coordinating related litigation in various Circuits of the State. Compare the Multi-District Litigation Procedure in the federal system. Instead, [this state] has applied the abatement rule that the Legislature has mandated by statute. Conditional certification is a simple and efficient mechanism that is used to implement the abatement rule and to avoid duplicative class litigation."
Brief of Respondents in Opposition to Petition for Writ of Mandamus, at 17-18 (emphasis added).
These comments and the dispositive issues presented in this case and the related cases, namely, Ex parte American Bankers Life Assurance Co. of Florida, Ex parte Citicorp Acceptance Co., Ex parte Equity National Life Insurance Co., and Ex parte Mercury Finance Corp. of Alabama, lead unmistakably to two conclusions: (1) trial judges are conditionally certifying large numbers of class actions because of a race to certification, and (2) the race was set in motion by FNB of Jasper I. We shall address these conclusions in turn, but in reverse order.

A. FNB of Jasper I
The McIlwains, the plaintiff respondents in Ex parte Citicorp, interpret FNB of Jasper I as holding that as soon as "any trial court *348 issues an order of class certification, it abates all other class action proceedings involving the same claims." Ex parte Citicorp, Brief of Respondents in Opposition to Petition for Writ of Mandamus, at 17. This interpretation of FNB of Jasper I is widely shared and often vocalized by Alabama litigants in briefs and oral arguments. This is true despite the fact that this Court, in First Nat'l Bank of Jasper v. Crawford, 689 So.2d 43 (Ala.1997) ("FNB of Jasper II"), carefully characterized that proposition as based on dictum. 689 So.2d at 46.
In FNB of Jasper I and II, we attempted to articulate a rule that would resolve a conflict produced by the filing of six different complaints, each containing substantially identical class allegations, against the same defendant, in three different counties, on the same day. 675 So.2d at 348. In both cases, the First National Bank of Jasper sought to confine class litigation to one forum. It did so, however, solely on the authority of Ala.Code 1975, § 6-5-440, the abatement statute, which provides:
"No plaintiff is entitled to prosecute two actions in the courts of this state at the same time for the same cause and against the same party. In such a case, the defendant may require the plaintiff to elect which he will prosecute, if commenced simultaneously, and the pendency of the former is a good defense to the latter if commenced at different times."
Whether the popular interpretation of FNB of Jasper I is correct is now a moot issue, for we have today overruled FNB of Jasper I and FNB of Jasper II to the extent they held that § 6-5-440 applies to class actions. Ex parte State Mutual Ins. Co., 715 So.2d 207 (Ala.1997) (withdrawing opinion of April 4, 1997).
Ex parte State Mutual involved two competing actions, one of which was based on a complaint containing class allegations filed in Greene County against State Mutual Insurance Company ("State Mutual"). The other action was based on a complaint without class allegations, filed in Hale County against the same defendant. 715 So.2d at 209. The Hale County action was commenced after the Greene County action, but before a class was certified in the Greene County action. Id. at 209. In the Greene County Circuit Court, State Mutual and the class representatives argued that, on the basis of § 6-5-440, as interpreted in FNB of Jasper I, the certification in Greene County ipso facto abated the Hale County individual action. Ex parte State Mutual Ins. Co., at 210. The trial court disagreed and amended the class definition to exclude the plaintiffs in the Hale County action. Id. at 210.
State Mutual and the class representatives appealed to this Court, seeking a judgment directing the Greene County Circuit Court to vacate its order excluding from the class the plaintiffs in the individual action. Id. at 211. On appeal, they reiterated the arguments they had made in the trial court regarding the application of § 6-5-440 as interpreted by FNB of Jasper I. Ex parte State Mutual Ins. Co., at 211.
Initially, on April 4, 1997, this Court issued an opinion in which it refused to vacate the trial court's order. However, State Mutual and the class representatives sought a rehearing. The rehearing application was accompanied by briefs of numerous amici curiae addressing the development of class-action practice in Alabama since FNB of Jasper I and FNB of Jasper II. Ex parte State Mutual Ins. Co., at 212. Some of those amici expressed concerns identical to the ones presented by the respondents in Ex parte Citicorp, and by the trial court in its order in this case. One such concern, described as "claim jumping," was explained as follows:
"`[A] plaintiff could file a purported class action in Jefferson County, Alabama, and spend 12 months preparing the case for a class action hearing, but prior to the conduct of that hearing, another plaintiff could file an action in another Alabama county copying the exact same Jefferson County complaint, but substituting in a new named plaintiff and getting a different Alabama Circuit Court to certify the newly filed action as a class action. Under this Court's [April 4, 1997] holding in the instant case, the certification in the second filed action would abate the previously filed action and negate 12 months' work *349 that had been done toward preparing for the class certification hearing.'"
Ex parte State Mutual Insurance Co., 715 So.2d at 212 (quoting Amicus Curiae Brief (Filed by Various Class Action Firms), ¶ 2).
After an extensive review of the history of the class-action device and the common-law abatement rule, which is codified in § 6-5-440, this Court reconsidered its previous holding in that case; it issued a new opinion reversing the trial court's order amending the class. Ex parte State Mutual Ins. Co., 715 So.2d at 219. However, it did so on the ground that § 6-5-440 has no application to class actions. Thus, it was necessary to overrule FNB of Jasper I and FNB of Jasper II, to the extent they were based on § 6-5-440. Ex parte State Mutual Ins. Co., 715 So.2d at 219.
In overruling those cases, we acknowledged that "our ... attempt to incorporate, or fuse, the abatement rule with class-action procedureas we did in FNB of Jasper I ha[d] ... resulted in chaos," Ex parte State Mutual Ins. Co., 715 So.2d at 214, and "that class-action practice in Alabama has been in a state of confusion ever since FNB of Jasper I was decided." 715 So.2d at 212.
Although Ex parte State Mutual Ins. Co. involved a conflict between a class action and an individual action, we stated: "[B]ecause § 6-5-440 is inapplicable in cases involving class actions competing with individual actions, a fortiori, § 6-5-440 is inapplicable in cases such as FNB of Jasper I and FNB of Jasper II, which involved competing class actions." Ex parte State Mutual Ins. Co., at 220 (emphasis in original). Indeed, in saying so we specifically had in mind arguments regarding "claim jumping" and the "race to justice," such as those that are made in this case.
We, therefore, concede that trial judges have been conditionally certifying large numbers of class actions in order to protect the jurisdiction of their courts and that they have been doing so in direct response to FNB of Jasper I. In the following subpart of this opinion, we shall discuss why the abrogation of the unworkable rule of FNB of Jasper I has removed the incentive for conditional certifications.

B. Remedy for the Race to Certification
The remedy for the race-to-certification problem is found in Ex parte Liberty National Life Insurance Co., 631 So.2d 865 (Ala. 1993). That case, like FNB of Jasper I, involved competing class actions. The first action containing class allegations was commenced against Liberty National Life Insurance Company ("Liberty National") in the Barbour County Circuit Court in October 1992. Id. at 866. On March 10, 1993, that court certified a non-opt-out class pursuant to Ala. R. Civ. P. 23(b)(2). 631 So.2d at 866.
Approximately three weeks later, another action containing class allegations "virtually identical to those in the Barbour County complaint" was commenced against Liberty National in Mobile County. Id. In fact, the plaintiffs in the Mobile County action sought to attack collaterally the action in Barbour County. The complaint filed in Mobile County "stated that the Mobile plaintiffs were seeking to challenge the validity of the Barbour County class certification." Id. (Emphasis added.)
Liberty National moved the Mobile County Circuit Court to dismiss the action in that county, but the court denied the motion. Id. at 866-67. Liberty National then sought a writ of mandamus from this Court directing the Mobile County Circuit Court to dismiss the action challenging the class-action certification in Barbour County. Id. at 867. This Court issued the writ of mandamus. Id. In doing so, it explained:
"The law is clear that the circuit court in which jurisdiction over a controversy is first invoked has exclusive jurisdiction over that controversy until that controversy is concluded, subject only to appellate review. Ex parte Burch, 236 Ala. 662, 184 So. 694 (1938).
"`It is uniformly held that where two or more courts have concurrent jurisdiction, the one which first takes cognizance of a cause has the exclusive right to entertain and exercise such jurisdiction, to the final determination of the action and the enforcement of its judgment or decrees.'

*350 "... `It is a familiar principle that when a court of competent jurisdiction has become possessed of a case its authority continues, subject only to the appellate authority, until the matter is finally and completely disposed of, and no court of co-ordinate authority is at liberty to interfere with its action....'

"... `All the authorities recognize the importance of carefully preserving the boundary line between courts of concurrent jurisdiction, in order to prevent conflicts, and to preserve in harmony their relations to each other.'"
"Ex parte Burch, 236 Ala. 662, 665, 184 So. 694, 697 (1938).
"These principles have been restated numerous times:
"`[W]here two courts have equal and concurrent jurisdiction, the court that first commences the exercise of its jurisdiction in a matter has the preference and is not to be obstructed in the legitimate exercise of its powers by a court of coordinate jurisdiction.'
"Ex parte State ex rel. Ussery, 285 Ala. 279, 281, 231 So.2d 314, 315 (1970) ....
"The Barbour Circuit Court initially exercised jurisdiction over this matter, and it must be permitted to retain jurisdiction without any interference by any other circuit court. It appears from the express language of their complaint and their arguments in the Mobile Circuit Court that the Mobile plaintiffs were attempting to have a second circuit court review the case and reverse the orders of the first circuit court to exercise jurisdiction.... In view of the class action pending in Barbour County, the Mobile Circuit Court should have dismissed or stayed the action filed by the Mobile plaintiffs. The law does not permit a second circuit court to adjudicate the same controversy that is being litigated in a pending action in another circuit court of competent jurisdiction. The writ of mandamus in case number 1921440 is, therefore, due to be granted."
631 So.2d at 867 (emphasis added). See also Adams v. Robertson, 676 So.2d 1265 (Ala. 1995), cert. granted, 518 U.S. 1056, 117 S.Ct. 37, 135 L.Ed.2d 1128 (1996), cert. dismissed as improvidently granted, 520 U.S. 83, 117 S.Ct. 1028, 137 L.Ed.2d 203 (1997); Benefield v. Liberty National Life Ins. Co., 632 So.2d 1328 (Ala.1994).
The rule applied in Ex parte Liberty National Life Insurance Co. is well established. Cf. Peck v. Jenness, 48 U.S. (7 How.) 612, 624-25, 12 L.Ed. 841 (1849); Ex parte Moore, 382 So.2d 548, 550 (Ala.1980) ("The first court seized of the issues involved, if identical, whether by action for declaration, or other judgment, must be permitted to retain jurisdiction of the case"); Ex parte State ex rel. Ussery, 285 Ala. 279, 281, 231 So.2d 314, 315 (1970); Dorrough v. McKee, 264 Ala. 663, 669, 89 So.2d 77, 82 (1956); Gay, Hardie & Co. v. Brierfield Coal & Iron Co., 94 Ala. 303, 308, 11 So. 353, 354 (1891); Eaton v. Patterson & Hinchman, 2 Stew. & P. 9, 15-16 (Ala.1832). The rule "is enforced to prevent unseemly, expensive, and dangerous conflicts of jurisdiction and of process." Ex parte Burch, 236 Ala. 662, 665, 184 So. 694, 697 (1938). The logical import of this rule and the practical effect of its application are that a court lacks subject matter jurisdiction over an action containing class allegations, as long as there is pending in another court a prior-filed action involving substantially identical class allegations.
As the trial court aptly observed in its certification order: "Unlike the Federal Courts, our State Courts have no procedure in place to address the problems that arise in multi-jurisdiction litigation." However, The application of this rule in situations involving competing class actions, in conjunction with Ex parte State Mutual and the overruling of FNB of Jasper I and FNB of Jasper II, will solve the problems presented in this case and in similar cases. It will obviate problems such as the race to certification and "claim jumping." In doing so, it will remove all the incentive for conditional, or ex parte certifications. The following hypothetical scenarios will illustrate the operation and effect of this rule.
Hypothetical One. Assume that on January 1, 1998, a complaint containing class allegations against a defendant insurance company is filed in the Jefferson County Circuit Court. Also assume that on June 1, 1998, *351 before the Jefferson County Circuit Court addresses issues of class certification, an attorney, having learned of the Jefferson County action, files an action in the Montgomery County Circuit Court, copying the language and class allegations in the Jefferson County action, but inserting the names of different class representatives. Assume further that the attorney in the Montgomery County action is successful in getting a class certified by June 15, 1998, before the Jefferson County judge addresses the certification issues. Subsequently, a motion is made to stay or abate the Jefferson County action on the ground that the certified Montgomery County action has subsumed the issues and class members in the Jefferson County action.
That motion is due to be denied summarily. That is so, because "the court that first commences the exercise of its jurisdiction in a matter," in this scenario, the Jefferson County Circuit Court, "has the preference and is not to be obstructed in the legitimate exercise of its powers by a court of coordinate jurisdiction." Ex parte State ex rel. Ussery, 285 Ala. 279, 281, 231 So.2d 314, 315 (1970). Indeed, if the parties in the Montgomery County action were to proceed to a judgment in that court before the Jefferson County Circuit Court addressed certification, the judgment would be void. It would be void on the ground that the Montgomery County Circuit Court lacked subject matter jurisdiction as long as a prior-filed action was pending in a sister circuit. This result would remove not only the incentive for certification races and conditional certifications, but also the incentive a class-action defendant might have for electing to proceed in the Montgomery County forum, hoping for a better result in that court.
Hypothetical Two. Assume the same facts as in Hypothetical One, except that, in this case, assume that on August 1, 1998, the Jefferson County Circuit Court judge, having conducted full-blown evidentiary hearings on the certification issues, holds that the action does not comply with Rule 23, and denies the plaintiffs' motion for certification. The denial of certification removes the jurisdictional impediment to the action in Montgomery County. Therefore, to the extent the denial of certification is not binding on the putative class members in the Montgomery County action,[2] the Montgomery County action may go forward.
This is the rule that should have been applied in FNB of Jasper I and FNB of Jasper II. Its application in class-action cases will obviate the needreal or perceivedfor ex parte or conditional certification as a means of protecting jurisdiction. This is so, because, under this rule, a first-filed case containing class allegations cannot be preempted by certification in a later-filed class action. This rule entirely undercuts the rationale on which the certification was expressly based in this case.
In conclusion, the trial court's order of conditional certification failed to comply with Rule 23, for the reasons discussed above. The petition for the writ of mandamus is, therefore, granted.
WRIT GRANTED.
ALMON, SHORES, and BUTTS, JJ., concur.
KENNEDY, J., concurs specially.
HOOPER, C.J., and MADDOX, HOUSTON, and SEE, JJ., concur in the result.
KENNEDY, Justice (concurring specially).
I write to express my concern regarding this case and five other cases decided today involving the question of conditional certification and/or abatement of class actions: Ex parte Citicorp Acceptance Co., 715 So.2d 199 (Ala.1997); Ex parte Equity National Life Insurance Co., 715 So.2d 192 (Ala.1997); Ex parte Mercury Finance Corp., 715 So.2d 196 (Ala.1997); Ex parte American Bankers Life Assurance Co. of Florida, 715 So.2d 186 (Ala. 1997); Ex parte State Mutual Insurance Co., 715 So.2d 207 (Ala.1997); Ex parte First *352 National Bank of Jasper, 717 So.2d 342 (Ala. 1997).
These six separate cases have a collective impact on the application of Rule 23, and it is obvious to me that this Court is straining for results. I am of the opinion that today's opinions in these cases do not clearly articulate a standard for the trial courts to follow. Although I agree with Justice Cook's interpretation of General Telephone Co. of the Southwest v. Falcon, 457 U.S. 147, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982), as stated in First National Bank of Jasper, I am afraid that these cases are fashioning a piecemeal remedy to what is indeed a complex problem. It would have been a more reasoned approach for this Court to amend Rule 23 to deal with the concerns over the issues raised in these six cases; if the court had taken that approach, it would have provided an opportunity for public comment on conditional certification and abatement of class actions. I have the utmost confidence that the trial courts are capable of supervising class actions once they are given consistent guidance from this Court.
Therefore, I dissent in Citicorp and Equity National because the trial court's order certifying the class complied with the current version of Rule 23. I concur in the result in Mercury Finance and American Bankers because the trial court's order failed to meet the requirements of Rule 23. I dissent in State Mutual Insurance because I believe the Court's ruling in that case will restrict an individual litigant's right to pursue an otherwise legitimate action. In the present case, I concur.
MADDOX, Justice (concurring in the result).
I concur completely with Justice See's special writing. I write separately only to express my thoughts on the feasibility and desirability of applying the legislatively adopted forum non conveniens statute to class actions.
Alabama does not have a statute similar to the one used in the federal court system that allows the transfer of cases involving multidistrict litigation to the most appropriate forum. However, Alabama does have § 6-3-21.1, Ala.Code 1975, the forum non conveniens statute, which allows a trial court to transfer a case to the most convenient forum. Many of the procedural problems that can occur when two or more actions involving the same claims are filed in separate counties could be alleviated by allowing their joinder in the most convenient forum. The application of the forum non conveniens statute, in my opinion, could help assure that litigants have their claims litigated quickly and less expensively and could eliminate the "rush to the courthouse" that spawned the "conditional class certification" problem in the first place. If the provisions of the forum non conveniens statute cannot be interpreted to permit a procedure similar to the procedure used in federal courts in multidistrict litigation, the Legislature might consider addressing the issue.
HOUSTON, Justice (concurring in the result).
See Justice See's concurrence in the result in Ex parte State Mutual Ins. Co., 715 So.2d 207 (Ala.1997), which I joined.
SEE, Justice (concurring in the result).
I concur in the result reached by the majority in vacating the conditional class certification order of the trial court,[3] but I write separately to clarify the necessity for the trial court to conduct a rigorous analysis before certifying a class for settlement purposes. Although conditional class certification for settlement is not at issue in this case, the majority expresses a broad approval of the practice, based on the following rationale:
"Temporary settlement classes bear two significant characteristics. First, they are entered upon the agreement of the defendant. Second, they promote the strong policy favoring settlements."
717 So.2d at 344 (emphasis in original). A third characteristic, not mentioned by the majority, is that any agreement between the *353 class representative plaintiffs and the defendant offers the potential for settlements that through collusion or simple inadvertence give inadequate protection to certain class members who are not fully represented by the named plaintiffs.
In Amchem Products, Inc. v. Windsor, 521 U.S. 591, ___, 117 S.Ct. 2231, 2241, 138 L.Ed.2d 689 (1997), the Supreme Court of the United States addressed the dangers associated with the certification of a class for settlement purposes. In Amchem, id. at ___ _ ___, 117 S.Ct. at 2241-42, after the action had been "conditionally certified," the defendants obtained an injunction to prevent further actions against them by class members who had failed to timely opt out of the certified class. The Supreme Court ruled that even though the district court had found that class counsel had ably negotiated a "fair" settlement in the best interests of the class, conditional certification for settlement purposes was improper. Id. at ___, 117 S.Ct. at 2252. The Supreme Court stated that even in the settlement context class certification requires a "close look" ata rigorous analysis ofRule 23's certification criteria. Id. at ___, 117 S.Ct. at 2246. The Supreme Court stated:
"Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, ... for the proposal is that there be no trial. But other specifications of the rulethose designed to protect absentees by blocking unwarranted or overbroad class definitionsdemand undiluted, even heightened, attention in the settlement context. Such attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold."
Id. at ___, 117 S.Ct. at 2248 (emphasis added) (citations and footnote omitted).
With respect to whether the district court's general impression of the fairness of the settlement preempted a rigorous analysis of Rule 23's class certification criteria, the Supreme Court stated:

"The safeguards provided by the Rule 23(a) and (b) class-qualifying criteria, we emphasize, are not impractical impedimentschecks shorn of utilityin the settlement class context. First, the standards set for the protection of absent class members serve to inhibit appraisals of the chancellor's foot kindclass certifications dependent upon the court's gestalt judgment or overarching impression of the settlement's fairness.
"Second, if a fairness inquiry under Rule 23(e) controlled certification, eclipsing Rule 23(a) and (b), and permitting class designation despite the impossibility of litigation, both class counsel and court would be disarmed. Class counsel confined to settlement negotiations could not use the threat of litigation to press for a better offer ... and the court would face a bargain proffered for its approval without benefit of adversarial investigation ...."
Amchem, ___ U.S. at ___, 117 S.Ct. at 2248-49 (emphasis added) (citations omitted).[4]
*354 The Supreme Court conducted a rigorous analysis and specifically held that the district court had erred in summarily certifying the class, because the distinct interests of certain class members were not adequately represented by the named plaintiffs.[5]
The potential for a collusive or unrepresentative settlement pursuant to a conditional certification under Federal Rule 23 is also present in regard to a conditional certification under Alabama Rule 23.[6] Therefore, in *355 my view, a trial court should, before conditionally certifying a class, conduct a rigorous analysis oftake a "close look" ateach of the certification factors (except, perhaps, trial management) enumerated in Rule 23, whether the certification is for settlement purposes or otherwise.
HOOPER, C.J., and MADDOX, J., concur.
NOTES
[1] In fact, Falcon recognized that each case must be analyzed on its facts. The trial court is required to apply to the specific facts in each case the analysis required by Rule 23.
[2] Cf. FNB of Jasper I, 675 So.2d at 349 ("denial of class certification, so long as the denial is not based upon inadequate representation by the named plaintiff or plaintiffs, would also be binding on other putative members") (Houston, J., concurring specially).
[3] As stated in Ex parte Citicorp Acceptance Co., 715 So.2d 199 (Ala.1997), a trial court may not conditionally certify a class action without conducting a "rigorous analysis" of the certification factors listed in Rule 23, Ala. R. Civ. P.
[4] Like Federal Rule 23, Alabama Rule 23, Ala. R. Civ. P., provides:

"(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.
"(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
"(1) the prosecution of separate actions by or against individual members of the class would create a risk of
"(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
"(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
"(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
"(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.
"....
"(e) Dismissal or Compromise. A class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs."
[5] Amchem involved a massive asbestos-litigation settlement and a class of plaintiffs that included persons who were currently suffering from asbestos-related illnesses and persons who had been exposed to asbestos, but had yet to develop symptoms. It was in the interest of certain class representatives, who were currently suffering asbestos-related illnesses, and in the interest of their counsel, to accept immediate cash payments as settlement. Amchem, ___ U.S. at ___, 117 S.Ct. at 2251. Such a settlement, however, was to the detriment of those class members who had yet to develop symptoms, because they would receive little if any benefits for medical expenses they had yet to incur. Id. These class members would have preferred for the settlement to include a fund that would provide long-term benefits. Id. This kind of situation could create an incentive for a defendant and the class representative plaintiffs, and their counsel, to reach an immediate settlement that benefits the class representatives and the defendant at the expense of certain class members not privy to the settlement negotiations. Thus, despite the district court's summary findings that the class representatives were adequate and that there was no collusion, the potential for collusion, or neglect, required a rigorous analysis of the class certification criteria. Id. This rigorous analysis uncovered inadequate class representation in Amchem. Id.
[6] The majority also states that "[a]t this time, we need not, and do not, determine whether ex parte certifications are invalid per se" and it cites General Telephone Co. of the Southwest v. Falcon, 457 U.S. 147, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). 717 So.2d at 347. Falcon, 457 U.S. at 160, 102 S.Ct. at 2372, indicates that some classes may be certified where "the issues are plain enough from the pleadings to determine whether the interest of the absent parties [i.e., nonrepresentative class members] are fairly encompassed within the named plaintiff's claim." (Emphasis added.) Of course, the "pleadings" to which the Supreme Court referred include both the plaintiff's complaint and the defendant's answer. See Rule 7(a), Fed.R.Civ.P. (defining "pleading" to include "a complaint and an answer"); see also Rule 7(a), Ala. R. Civ. P. (defining "pleading" as "a complaint and an answer"). As the Supreme Court in Amchem made clear, Falcon was not intended to promote the abandonment of the requirement for trial courts to take a "close look" at, that is, to conduct a rigorous analysis of, Rule 23's certification factors. See Ex parte Citicorp Acceptance Co., 715 So.2d 199, 205 (Ala.1997) ("A class should not be certified without notice to the defendant, who may be able immediately and definitively to dispute the plaintiff's allegations."); see also Bagley v. City of Mobile, 352 So.2d 1115, 1118 (Ala. 1977) (stating that the trial court must determine that all of the requirements of Rule 23(a) and at least one requirement of Rule 23(b) are met before certifying a class).

The majority purports to resolve the problems arising from the race to the courthouse among competing actions, through a patchwork application of statutory, common law, and equitable abatement rules. In doing so, the majority disregards the Legislature's having provided a first-to-file abatement statute, Ala.Code 1975, § 6-5-440, which, by its terms, applies to all situations involving competing actions. For example, if a defendant faces two competing class actions, § 6-5-440 will abate the second-filed class action. This is true even if the second-filed class action is certified first, because certification relates back to the date the class complaint was filed. United States Parole Comm'n v. Geraghty, 445 U.S. 388, 404-05 n. 11, 100 S.Ct. 1202, 1212-14 n. 11, 63 L.Ed.2d 479 (1980); 13A C. Wright, et al., Federal Practice and Procedure § 3533.9, at 411 (1984). Instead of following the plain terms of the statute, the majority cites Ex parte Liberty National Life Ins. Co., 631 So.2d 865 (Ala.1993), to support its patchwork approach, even though Ex parte Liberty National itself cited § 6-5-440. See Ex parte State Mutual Ins. Co., 715 So.2d 207 (Ala.1997) (See, J., concurring in the result).