806 So.2d 389 (2001)
Ex parte SPEEDEE CASH OF ALABAMA, INC.
(Re James E. Taylor et al. v. Speedee Cash of Alabama, Inc., et al.)
1000076.
Supreme Court of Alabama.
June 22, 2001.
*390 Louis E. Braswell of Hand Arendall, L.L.C., Mobile, for petitioner.
J. Michael Rediker, Thomas L. Krebs, and Michael C. Skotnicki of Ritchie & Rediker, L.L.C., Birmingham; Lange Clark, Birmingham, John Hollis Jackson, Clanton; and Daniel B. Banks, Jr., of Morris, Conchin, Banks & Cooper, P.C., Huntsville, for respondents.

On Application For Rehearing
STUART, Justice.
The opinion of April 27, 2001, is withdrawn and the following is substituted therefor.
Speedee Cash of Alabama, Inc. ("Speedee Cash"), is a defendant in an action pending in the Circuit Court of Chilton County. It petitions for a writ of mandamus directing the Chilton Circuit Court to vacate its order lifting the stay of proceedings in the pending action. We grant Speedee Cash's petition.

Introduction
The action pending in the Chilton Circuit Court is styled Taylor et al. v. Speedee Cash of Alabama, Inc., et al. (We will refer to that action as the "Chilton County action.") A competing action, styled Alabama Check Cashers Association et al. v. State Banking Department of the State of Alabama et al., is pending in the Circuit Court of Montgomery County. (We will refer to that action as the "Montgomery County action.") Although they are more specifically identified later in this opinion, the defendants in these competing actions are known as "payday lenders," and the plaintiffs are individual borrowers. In payday lending, a borrower writes a check to the lender for more than the cash received, and the lender agrees not to deposit the check until some later date, a date up until which the borrower may redeem the check. This is known as a "deferredpresentment transaction." Whether the borrower in fact redeems the check from the lender, or the lender presents the check to the borrower's bank for payment, the lender retains the difference between the amount of the cash given to the borrower and the amount of the check. The plaintiff borrowers allege that this difference retained by the defendant lenders constitutes "interest" earned on the transaction.

The Prior Filed Litigation (The Montgomery County Action)
On August 5, 1998, the Alabama Check Cashers Association and various payday lenders instituted the Montgomery County action, against the State Banking Department and other defendants. In the Montgomery County action, the payday lenders seek a judgment declaring that the Alabama Small Loan Act does not apply to the operations of the payday lenders. The lenders also seek injunctive relief to prevent *391 the Banking Department from requiring the lenders either to obtain a "smallloan license" or to cease and desist from their operations.
On October 9, 1998, after negotiations and mediation, the trial court in the Montgomery County action entered a consent order, which encompassed an agreement of the payday lenders and the Banking Department to a stipulated order for an injunction. In exchange for the lenders' agreement to adhere to the provisions of that order governing "deferred-presentment transactions" (i.e., payday loans), the Banking Department agreed not to seek to enjoin the lenders' business operations during the pendency of the Montgomery County action.
On November 23, 1998, a motion to intervene both as of right and permissively was filed in the Montgomery County action on behalf of a purported class of borrowers who had obtained payday loans from any of the various lenders involved in that action. The motion defined this purported class as "a class of borrowers ... who obtained loans or extensions of credit or credit transactions in the forms herein-above described from any Lenders and members of the Lender Defendant Class in Alabama in the six years next preceding the filing of this complaint in intervention." The defendants to the intervenors' claims in the Montgomery County action included Speedee Cash, as well as other payday lenders and the Alabama Check Cashers Association.
The intervenors in the Montgomery County action objected to the entry of the consent order and complained of alleged violations of the Alabama Small Loan Act and, in regard to their payday loans, made claims alleging unconscionability, unjust enrichment, and money had and received. On March 1, 1999, the trial court in the Montgomery County action partially granted the intervenors' motion, "for the limited purpose of determining the declaration of rights as to the legal issue of the applicability of the Alabama Small Loan Act to [Plaintiffs'] check cashing transactions as outlined in the [Plaintiffs'] complaint, as amended." The trial court further ordered: "All other complaints in intervention are otherwise Denied. This order does not preclude the filing of separate suits." Thereafter, the intervenors filed a motion for class certification pursuant to Rule 23(b)(1) and (b)(2), Ala. R. Civ. P. The trial court in the Montgomery County action has not ruled on this motion.

This Litigation (The Chilton County Action)
On May 17, 1999, shortly after the trial court in the Montgomery County action had partially granted the motion to intervene, James E. Taylor and others filed the Chilton County action; they filed it as a putative class action. The named defendants were Speedee Cash and some 500 fictitiously named parties purportedly engaged in the business of payday lending. The Taylor plaintiffs asserted numerous violations of the Alabama Small Loan Act and made claims alleging unjust enrichment, unconscionability, the tort of outrage, and money had and received, all arising out of "payday" loans. For the Taylor plaintiffs to recover for the alleged violations of the Alabama Small Loan Act, the trial court would have to hold that that Act applies to the payday lenders. The Taylor plaintiffs sought class certification on behalf of a class of persons who had obtained such loans in the six years preceding the filing of the complaint. Thus, if certified by the Chilton Circuit Court, this class will overlap significantly with the class seeking certification in the Montgomery County action.
*392 On June 30, 1999, Speedee Cash moved to dismiss or to stay the Chilton County action, asserting that the Chilton Circuit Court lacked subject-matter jurisdiction because of the pendency of the previously filed Montgomery County action. On October 19, 1999, the Chilton Circuit Court stayed the Chilton County action, pending further orders. On July 20, 2000, the Taylor plaintiffs moved to lift the stay, asserting that the trial court's order in the Montgomery County action did not allow the intervenors in that action to expand the scope of that litigation, but merely allowed intervention as to the declaratory and injunctive relief already requested by the payday lenders. The Taylor plaintiffs also noted that other class actions against payday lenders were proceeding in other courts despite the fact that the Montgomery County action was still pending. The Taylor plaintiffs argued that "[i]n none of these cases have the Circuit Courts declined to exercise jurisdiction because of the Montgomery [County] action." Finally, the Taylor plaintiffs argued that they had a constitutional right to proceed in a court of law to seek a remedy for the wrongs they claimed had occurred to them.
On September 13, 2000, the Chilton Circuit Court entered an order lifting the stay. Speedee Cash filed this petition for a writ of mandamus directing the Chilton Circuit Court to vacate its order of September 13, 2000.[1]

Appropriate Standards
"`Mandamus is an extraordinary remedy and requires a showing that there is "(1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court."'"
Ex parte Inverness Constr. Co., 775 So.2d 153, 156 (Ala.2000) (citations omitted). A writ of mandamus may not be issued to control or review the exercise of discretion, except where an abuse of discretion is shown. Ex parte Auto-Owners Ins. Co., 548 So.2d 1029, 1030 (Ala.1989).

Analysis
Citing Ex parte AmSouth Bank, 735 So.2d 1151 (Ala.1999), and related authority, Speedee Cash argues that the Montgomery County action and the Chilton County action are "substantially the same," that "[t]he parties are the same and the class allegations are identical," and that "[t]he claims are also based on the same alleged act or dispute, i.e., whether the check-cashing procedures of Speedee Cash and others are wrongful."
In response, the Taylor plaintiffs contend that the situation presented in the Chilton County action is unique and does not fall within the mandate of Ex parte AmSouth Bank, because of the limited intervention allowed by the order issued in the Montgomery County action. The Taylor plaintiffs argue that the trial court in the Montgomery County action refused to exercise jurisdiction over the intervenors' claims for money damages and allowed intervention only for the limited purpose of allowing the intervenors to seek declaratory and injunctive relief. The Taylor plaintiffs further argue that the Taylor complaint "brings express claims for compensatory and punitive damages against Speedee Cash apparently not allowed in the [Montgomery County action] because of the way the scope of consumers' intervention has been limited by [the trial *393 court] in the earlier [Montgomery County] action." Thus, the Taylor plaintiffs maintain that the Chilton County action does not compete with the Montgomery County action.
In Ex parte AmSouth Bank, this Court held:
"[W]hen a first-filed action containing class allegations is filed in a federal court in [Alabama], a State trial court with a later-filed action, involving the same parties and containing the same or substantially similar class allegations, should refuse to exercise jurisdiction over the action once it is apprised of the fact that the federal court has assumed jurisdiction of the earlier action."
735 So.2d at 1153. The AmSouth Bank Court went on to note:
"As of the date of the release of this opinion, there has been no certification in the Shelley action [the federal court action]. Therefore, the only injury AmSouth has incurred in regard to the State action (a showing of injury is required for the issuance of a writ of mandamus), see Ex parte Myer, [595 So.2d 890 (Ala.1992) ], is a requirement that AmSouth produce documents, prepare for depositions, and prepare for a class-certification hearing, while already doing these same things in regard to the action in the federal district court. This injury should be addressed not by abating [the plaintiff's] State action, but by putting it on administrative hold until the United States District Court certifies, or refuses to certify, the class in the Shelley action.... If a class is certified in the Shelley action and that class includes [the plaintiff] and his claims, then [the plaintiff's] State action must be abated. If, however, after that ruling [the plaintiff] is not a member of a certified class, then his case can be taken off administrative hold and can proceed as a class action or as an individual action, as the circuit court may determine."
735 So.2d at 1154.
It is significant that, in their complaint, the Taylor plaintiffs assert that the payday lenders violated the Alabama Small Loan Act, an assertion bottomed on the belief that the Alabama Small Loan Act applies to the payday lenders. This is the very issue being litigated in the Montgomery County action. Thus, as Speedee Cash argues, the subject matter of at least one issue presented in both actions is the same: whether the loans made by Speedee Cash and the other payday lenders are subject to the Alabama Small Loan Act.
Additionally, many of the parties to the two actions are the same: the plaintiff class in both actions includes those borrowers who have participated in "deferred-presentment transactions" with the defendant payday lenders in the six years preceding the filing of the complaints. Although the complaints were filed on different dates and thus will cover somewhat different periods, there will be a significant degree of overlap in the members of the two classes, if both classes are certified. Moreover, the defendant classes are the same or at least involve a significant degree of overlap. Significantly, Speedee Cash is included in both defendant classes.
Because both actions involve at least one identical substantive issue and Speedee Cash is a defendant in both actions, unless the second-filed action is stayed Speedee Cash will face the risk of inconsistent adjudications on that issue.
The Taylor plaintiffs' argument that the two actions are different because the remedies sought are different is an argument without distinction. The determining factors under Ex parte AmSouth Bank and related cases are not the kinds of remedies sought, but the identity of the parties and *394 the identity of the issues. Speedee Cash correctly argues that, regardless of whether the remedies sought in the two actions are the same, both actions involve class allegations and the parties and at least one substantive issue are the same or are substantially similar. The substantive issue raised in both actions is subject to the same proof. Like the defendant in Ex parte AmSouth Bank, Speedee Cash will be required to prepare for trial on the same issues and against the same parties in two separate courts. This is the exact scenario remedied by this Court in Ex parte AmSouth Bank.
Speedee Cash has established a clear legal right to the relief requested. The first-filed action containing class allegations (the Montgomery County action) takes precedence, and the second-filed action (the Chilton County action) should be administratively stayed. Accordingly, the Circuit Court of Chilton County is directed to administratively stay the Chilton County action until such time as the Montgomery Circuit Court rules on its pending motion for class certification. If the Montgomery Circuit Court certifies a class that includes the Taylor plaintiffs, then the Chilton County action should be stayed until such time as there is a resolution on the issues common to both actions.
OPINION OF APRIL 27, 2001, WITHDRAWN; OPINION SUBSTITUTED; PETITION GRANTED; WRIT ISSUED; APPLICATION FOR REHEARING DENIED.
MOORE, C.J., and HARWOOD, J., concur.
SEE and BROWN, JJ., concur in the result.
SEE, Justice (concurring in the result).
I concur in the result, issuing a writ directing the Chilton Circuit Court to administratively stay the Chilton County action until the Montgomery County court rules on the motion for class certification. However, I believe this conclusion is required not by Ex parte AmSouth Bank, 735 So.2d 1151 (Ala.1999), but by Ex parte Liberty National Life Insurance Co., 631 So.2d 865 (Ala.1993), and Ex parte First National Bank of Jasper, 717 So.2d 342 (Ala.1997).
Speedee Cash is a defendant in a Montgomery Circuit Court action and in a later-filed Chilton Circuit Court action involving a substantially similar class of plaintiffs and requiring the resolution of at least one identical substantive issue: whether the Alabama Small Loan Act governs the loans made by Speedee Cash and other payday lenders. In Ex parte Liberty National Life Insurance Co., supra, an action containing class allegations was filed against Liberty National in the Barbour Circuit Court.[2] 631 So.2d at 866. Approximately three weeks later, another action, containing class allegations "virtually identical to those in the Barbour County complaint," was filed against Liberty National in the Mobile Circuit Court. Id. The plaintiffs in that action collaterally attacked the Barbour County action. Id. Liberty National petitioned this Court for a writ of mandamus directing the Mobile Circuit Court to dismiss the action that challenged the Barbour County class-action certification. Id. at 866-67. We issued the writ, explaining:
"The law is clear that the circuit court in which jurisdiction over a controversy is first invoked has exclusive jurisdiction over that controversy until that controversy is concluded, subject only to appellate review.

*395 "`It is uniformly held that where two or more courts have concurrent jurisdiction, the one which first takes cognizance of a cause has the exclusive right to entertain and exercise such jurisdiction, to the final determination of the action and the enforcement of its judgment or decrees....
"`. . . .'
". . . .
"... In view of the class action pending in Barbour County, the Mobile Circuit Court should have dismissed or stayed the action filed by the Mobile plaintiffs. The law does not permit a second circuit court to adjudicate the same controversy that is being litigated in a pending action in another circuit court of competent jurisdiction."
Liberty National, 631 So.2d at 867 (citations omitted) (emphasis added). Thus, this Court has held that in the situation of competing state-court class actions, the first class action prevails over a second substantially similar action filed in another state court.
In 1997, to remedy the "conditional-certification problem,"[3] this Court, in Ex parte First National Bank of Jasper, 717 So.2d 342 (Ala.1997) ("Jasper III"), restated the rule in Liberty National and illustrated the operation of the abatement rule. This Court explained that, in a situation involving two competing state-court actions in which class certification is granted in the second-filed action, Liberty National would mandate that "`the court that first commences the exercise of its jurisdiction in a matter has the preference and is not to be obstructed in the legitimate exercise of its powers by a court of coordinate jurisdiction.'" Jasper III, 717 So.2d at 350. Accordingly, this Court reasoned, such a "result would remove not only the incentive for certification races and conditional certifications, but also the incentive a class-action defendant might have for electing to proceed in the [second state] forum, hoping for a better result in that court." Id. at 351.
AmSouth is consistent with Liberty National and Jasper III; it holds that a previously filed class action prevails over a later-filed one, but AmSouth addresses the problem of an earlier-filed federal action. The legal actions here, like those in Liberty National and Jasper III, were both filed in State courts. Therefore, in granting the petition for the writ of mandamus, I would rely not on AmSouth, but on this Court's decisions in Liberty National and Jasper III, supra.
NOTES
[1] On December 6, 2000, this Court ordered that all proceedings in the Chilton County action be stayed pending further orders of this Court.
[2] That court ultimately certified a non-opt-out class pursuant to Ala. R. Civ. P. 23(b)(2).
[3] After this Court held that once a trial court issues an order of class certification, that order abates all other class-action proceedings involving the same claims, trial judges began "conditionally certifying" large numbers of class actions, in order to protect the jurisdiction of their courts. See Ex parte First Nat'l Bank of Jasper, 675 So.2d 348, 349 (Ala.1995) (Jasper I); Ex parte First Nat'l Bank of Jasper, 717 So.2d 342, 349 (Ala.1997) (Jasper III) ("We, therefore, concede that trial judges have been conditionally certifying large numbers of class actions in order to protect the jurisdiction of their courts and that they have been doing so in direct response to [Jasper I].").